IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ANDRES CARMONA, III**,

    Plaintiff,

vs.                                                      **No. 12cv0678 WJ/KBM**

**BPA JAVIER PADILLA;**
**BPA ROBERTO VILLARREAL;**
**JANET NAPOLITANO, DEPARTMENT**
**OF HOMELAND SECURITY,**

    Defendants.

### MEMORANDUM OPINION AND ORDER DISMISSING CASE

**THIS MATTER** comes before the Court on pro se Plaintiff Andres Carmona III's *Application to Proceed In Forma Pauperis* ("IFP"), filed June 22, 2012 [Doc. 2], and on the Court's concomitant obligation to "screen [his] case under 28 U.S.C. §§ 1915(a) and (e)," *Lister v. Dep't Of Treasury*, 408 F.3d 1309, 1311 (10th Cir. 2005).  The Court must dismiss the action "at any time if the court determines that" the plaintiff is, in fact, able to pay the filing fees and his "allegation of poverty is untrue," § 1915(e)(2)(A), or if the complaint "fails to state a claim on which relief may be granted," § 1915(e)(2)(B)(ii).  *See Trujillo v. Williams*, 465 F.3d 1210, 1217 n.5 (10th Cir. 2006) (noting that dismissals under § 1915(e)(2)(A) & (B) are mandatory).

**I.  APPLICABLE LEGAL STANDARDS**

A party applying to proceed IFP must show that he "cannot because of his poverty pay or give security for the costs . . . and still be able to provide himself . . . with the necessities of life." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

The Tenth Circuit Court of Appeals has set forth the following standards that district courts should apply in resolving a motion to dismiss brought under rule 12(b)(6) of the Federal Rules of Civil Procedure.

> *Bell Atlantic Corp. v. Twombly* [] reject[ed] the "no set of facts" language of *Conley* [ *v. Gibson*, 355 U.S. 41, 45-46 (1957),] and announc[ed] a new (or clarified) standard: to withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." --- U.S. ----, ----, 127 S. Ct. 1955, 1974, 167 L. Ed.2d 929 (2007).  Under this revised standard, as we explained in *Ridge at Red Hawk, L.L.C. v. Schneider*:
>
>> the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.
>
> 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).  The burden is on the plaintiff to frame a "complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief.  *Twombly*, 127 S. Ct. at 1965.  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.*

*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

The Court applies this same standard in its review under § 1915(e)(2) to determine whether Carmona III has stated a cognizable federal claim.  *See Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007).  The Court will accept as true Carmona III's allegations and construe them, and any reasonable inferences to be drawn from them, in the light most favorable to him.  *See id.*  But the Court "will not supply additional facts, [or] construct a legal theory for [a] plaintiff that assumes facts that have not been pleaded."  *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989).

The courts should take a two-step approach in determining whether a complaint states a claim upon which relief may be granted.  First, it "identif[ies] the [conclusory] allegations in the complaint that are not entitled to the assumption of truth" and disregards them   *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).  Then it only "consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief."  *Id.* at 681; *see id.* at 686 (rejecting the plaintiff's argument that he sufficiently stated a claim for relief by generally alleging that the defendants "discriminated against him 'on account of [his] religion, race, and/or national origin and

for no legitimate penological interest,'" and stating, "[w]ere we required to accept this allegation as true, respondent's complaint would survive petitioners' motion to dismiss. But the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.") (citations omitted).

## II.   CARMONA III HAS NOT SUBMITTED SUFFICIENT FINANCIAL INFORMATION.

Although his motion to proceed ifp states that he receives $300/month[1] from his father's pension on behalf of his two younger brothers, *see* Doc. 2 at 1, Carmona III does not give sufficient information about his own sources of income or indicate who pays for his living expenses in Georgia, where he and his brothers apparently now live. Carmona III states that he is unemployed, but he does not indicate whether he is looking for a job or is planning to return to college. He also has failed to sign his application to proceed IFP under penalty of perjury. Failure to "fill out the proper forms or to otherwise provide the district court with the requisite information" in a sworn affidavit is grounds to deny a motion to proceed IFP because the Court is not required to rely on a plaintiff's "bald assertions" that he is unable to pay fees. *Lister*, 408 F.3d at 1313; *see also Raynor v. Wentz*, No. 09-7079, 357 Fed. App'x 968, 969, 2009 WL 4928368, *1 (10th Cir. Dec. 22, 2009) (affirming denial of IFP and dismissal of complaint where the district court "noted that the IFP motion contained almost no information that would allow it to properly review Plaintiff's expenses and income . . . ."). The affidavit requirement also serves as a deterrent function because "[o]ne who

---

[1] Carmona III's father, Andres M. Carmona a/k/a Andres Carmona Miranda ("Carmona, Sr.), who is incarcerated and whose living expenses are all paid for at taxpayer expense, has sworn that his pension is $740/month. *See Carmona v. Gillogly*, No. 00-1541 LH/KBM Doc. 3 at 2 (Carmona Sr.'s application to proceed IFP stating that his disability pension is $740/month) (D.N.M. Nov. 17, 2000). Carmona III is cautioned that, in the future he must makes statements in his financial affidavits under penalty of perjury.

makes this affidavit exposes himself to the pains of perjury in a case of bad faith. . . . This constitutes a sanction important in protection of the public against a false or fraudulent invocation of the statute's benefits." *Adkins*, 335 U.S. at 338 (internal quotation marks omitted).

Under these circumstances, the Court cannot find that Carmona III has satisfied his burden to show that he cannot pay for the necessities of life and for filing fees. If Carmona III chooses to amend his Complaint as required below and again seek permission to proceed IFP, he must fill out the long-form standard application to proceed IFP under penalty of perjury.

## III.   BACKGROUND AND ALLEGATIONS IN THE COMPLAINT

The Court takes judicial notice of other cases filed in this Court that have some direct bearing on the issues before it. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n. 5 (10th Cir. 2007) (stating, "we may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand"). Carmona III states that his father is "Andres M. Carmona[2]" ("Carmona, Sr."). *See* Doc. 2 at 1-2. Carmona, Sr. came to the United States illegally in 1968 and in 1977, he pleaded guilty to the aggravated felony of delivery of a controlled substance. *See Carmona v. United States Prison Facility*, No. 10cv987 RB/ACT, Doc. 3 at 6 (Am. Compl. filed by Carmona, Sr.) (D.N.M. Dec. 13, 2010); *United States v. Carmona-Miranda*, No. 05cr720 RB Doc. 7 (Carmona, Sr.'s indictment setting out his criminal history) (D.N.M. April 6, 2005). Carmona, Sr. worked in Georgia from 1995 until 2000, when he became disabled and was awarded the disability pension. *See Carmona v. United States Prison Facility*, No. 10cv987 RB/ACT Doc. 1 at 2, 5-6 (Complaint

---

[2] Carmona Sr. signs his name as "Andres M. Carmona," *see Carmona v. Gillogly*, No. 00-1541 LH/KBM Doc. 3 at 2 (Carmona Sr.'s application to proceed IFP), but also states his name as being "Andres Carmona Miranda." *See Carmona v. United States Prison Facility*, No. 10cv987 RB/ACT, Doc. 1 at 7 (Complaint signed by Carmona, Sr.) (D.N.M. Oct. 19, 2010).

filed by Carmona, Sr.) (D.N.M. Oct. 19, 2010). Carmona, Sr. returned to New Mexico in 2000, attended NMSU, and sued his Georgia physician for malpractice. *See Carmona v. United States Prison Facility*, No. 10cv987 RB/ACT, Doc. 3 at 6; *see also Carmona v. Gillogly*, No. 00-1541 LH/KBM Doc. 13 (D.N.M. Feb. 8, 2001) (transferring Carmona, Sr.'s case to Atlanta, Georgia). However, after an arrest in 2004, Border Patrol agents discovered that Carmona, Sr. had been deported in abstentia in Georgia in 2000 because of his felony drug conviction. *See United States v. Carmona-Miranda*, No. 05cv4020 KBM Doc. 1 (D.N.M. Jan. 2, 2005) (indictment describing circumstances of deportations); *Carmona v. United States Prison Facility*, No. 10cv987 RB/ACT, Doc. 1 at 6; *see id.* Doc. 3 at 6. "On July 1, 2004 [Carmona, Sr.] was arrested in Hope, New Mexico, and he was removed to Mexico on September 13, 2004. On October 31, 2004 he was [again] found in" Las Cruces. *United States v. Carmona-Miranda,* No. 05cv484 RB/WDS Doc. 23 (D.N.M. March 10, 2006) (R&R recommending dismissal of Carmona, Sr.'s habeas petition, which the Court adopted on March 30, 2006). After spending a year and one-half in detention, Carmona, Sr. was convicted "on one count of illegal reentry into the United States following deportation after conviction for an aggravated felony," and he was deported to Mexico for the second time in 2006. *See United States v. Carmona-Miranda*, No. 05cr720 RB Doc. 90 (D.N.M. Dec. 13, 2006) (order from Tenth Circuit denying motion to correct or vacate sentence and dismissing appeal); *Carmona v. United States Prison Facility*, No. 10cv987 RB/ACT, Doc. 1 at 6. After staying in Juarez for 2 ½ years, Carmona, Sr. decided to illegally return to the United States in March 2008, at his sons' and mother's behest. *See Carmona v. United States Prison Facility*, No. 10cv987 RB/ACT, Doc. 3 at 6. Carmona, Sr. obtained fraudulent documents, illegally using the name "Robert Rivera" to obtain insurance and to drive his "children around for sports and school." *Id.*, Doc. 3 at 7. On June 21, 2010, Carmona, Sr. was arrested by the "ICE Border Patrol" in Las Cruces. *Id.* Doc. 1 at 6.

5

On November 15, 2010, Carmona, Sr. pleaded guilty and was sentenced to three years imprisonment for "Reentry of a Removed Alien" and to making a "False Claim to Citizenship." *United States v. Carmona-Miranda*, No. 10cr2684 WJ Doc. 37 (D.N.M. April 27, 2011); *see also United States v. Carmona-Miranda*, No. 10mj1804 CG Doc. 1 (D.N.M. June 23, 2010) (criminal complaint stating that Javier Villarreal arrested Carmona, Sr. on Holman Rd. in Las Cruces on 6/21/10; that Carmona, Sr. presented a driver's license and social security card under the name "Robert Rivera" that did not belong to him; and that Carmona, Sr. had previously been deported to Mexico on April 4, 2006, subsequent to a conviction for possession of heroin in 1977). Carmona, Sr. was transferred to an Arizona prison facility in July 2011. *See Carmona v. United States Prison Facility*, No. 10cv987 RB/ACT, Doc. 7. This Court denied Carmona, Sr.'s motion to set aside his conviction on October 14, 2011. *See United States v. Carmona-Miranda*, No. 11cv0698 WJ/DJS Doc. 3 (D.N.M. Oct. 14, 2011.

. Although Carmona, Sr. filed an amended complaint in his 2010 civil-rights suit (after he pleaded guilty) that "named two Border Patrol agents and asserts a number of Fourth Amendment violations from the time of his [June 21, 2010] arrest," and which requested that his criminal "charges" be dismissed and that "that his removal proceedings be reopened," this Court denied that relief and dismissed his civil-rights complaint. *Carmona v. United States Prison Facility*, No. 10cv987 RB/ACT, Doc. 10 at 2-3 (D.N.M. Oct. 27, 2011).

The Complaint at bar is based on the events leading up to Carmona, Sr.'s June 21, 2010 arrest. According to Carmona, III, while Carmona, Sr. was driving Carmona, Sr.'s car on Holman Rd. in Las Cruces, N.M., and Carmona III was a passenger, the Defendant Border Patrol Agents stopped the car "for no reason." Compl. at 2, ¶ 1. According to Carmona III, the agents drew "their weapons and ask[ed them] to get out of the car" and then searched the car without a warrant, looking

6

for drugs and weapons and "treating us like second class citizens." *Id.* Carmona III complains that the agents then arrested Carmona, Sr. without reading him his *Miranda* rights. *See id.* at 4, ¶ 8; Doc. 2 at 2. Other than alleging that the Border Patrol Agents required Carmona, III to get out of the car, which Carmona III complains caused him to be "held up to ridicule" as his "neighbors dr[o]ve by," and alluding to a conclusion that the agents were "attempting to determine if the plaintiff had concealed drugs on his person," the Complaint does not specify what the Agents did to Carmona, III that allegedly violates **his** constitutional rights. *See* Compl. at 2-3, ¶¶ 2, 3.

Carmona III brings a *Bivens*[3] action seeking monetary damages against all Defendants[4]. He subsequently filed a disjointed and difficult-to-comprehend document entitled "Overview Tort Calim [sic] Act" that refers to the Federal Tort Claims Act. *See* Doc. 4. In his Complaint, Carmona III alleges that, because Carmona III's own driver's license had been suspended, Carmona, Sr. gave him rides to school at NMSU, *see* Compl. at 2, ¶ 2, and because Carmona, Sr. was arrested and deported after the stop, Carmona III no longer had a ride to school. *See id.*; Doc. 2 at 1-2. He concludes, therefore, that the Defendants unlawfully "depraved Plaintiff to register for summer classes" and prevented Carmona III from receiving his "statutory" right to a college education. Compl. at 2, ¶ 2; *id.* at 4, ¶ 9. Carmona, III also contends that, because Carmona, Sr. was stopped and the car was searched, he and his father were treated like "second class citizens" thereby causing him embarrassment and "loss of community standing" because neighbors drove by and saw the stop. *See id.* And he asserts that the agents discriminated against them because they asked if Carmona III and his father are citizens or had a green card. *See id.* at 4, ¶ 8.

---

[3] *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

[4] Carmona III also mentions Title VII, *see* Compl. at 4, ¶ 10, which prohibits discrimination in employment, but that statute is irrelevant to his claims.

The only allegations regarding Janet Napolitano are that she is the Secretary of Homeland Security, which is "legally responsible for the overall operation of the department and institution under its jurisdiction, including Las Cruces, New Mexico." *Id.* at 3, ¶ 6.

## IV. ANALYSIS

### A. Carmona III fails to state any claim against Napolitano or a claim under the FTCA.

It is clear that Carmona III seeks to hold the Secretary of Homeland Security vicariously responsible for the actions of the Border Patrol Agents solely because she is the supervisor of Homeland Security. But "vicarious liability is inapplicable to *Bivens* . . . ." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010) (discussing supervisory liability for alleged constitutional violations) (internal quotation marks omitted), *cert. denied*, ⎯ U.S. ⎯, 131 S. Ct. 2150, 179 L.Ed.2d 935 (2011). Instead, "when a plaintiff sues an official under *Bivens* . . . for conduct arising from his or her superintendent responsibilities, the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Id.* (internal quotation marks omitted). "There is no such animal as a *Bivens* suit against a public official tortfeasor in his or her official capacity. Instead, any action that charges such an official with wrongdoing while operating in his or her official capacity as a United States agent operates as a claim against the United States." *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001); *see Punchard v. United States Bureau of Land Mgmt.*, 180 Fed. App'x 817, 819, 2006 WL 1389107, **2 (10th Cir. May 18, 2006) (holding that *Bivens* claims for deprivation of constitutional rights "lie only against federal actors in their individual capacities, not in their official capacities and not against the federal agencies for which they work").

Insofar as Carmona III may be seeking to amend his Complaint to bring his claims under the Federal Tort Claims Act and to substitute the United States for any party, it has long been clear that

8

the United States has not waived its sovereign immunity under the Federal Tort Claims Act for constitutional-tort claims, *see F.D.I.C. v. Meyer*, 510 U.S. 471, 477-78 (1994) (holding that "the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims"), and Carmona III has alleged no facts to support the commission of any non-constitutional torts. Thus, if he chooses to amend his Complaint and attempt to refile, Carmona III must delete Napolitano as a Defendant and may only proceed under *Bivens* against the Border Patrol Agents.

**B. Carmona III has not stated a potential claim for damages other than nominal damages.**

Although Carmona III complains of both an unlawful stop and an unlawful search, because he was only a passenger in his father's car and he was not arrested, he does not have standing to directly challenge the search because his allegations demonstrate that he did not have a possessory or property interest in the car. *See United States v. Olivares-Rangel*, 458 F.3d 1104, (10th Cir. 2006). As to the investigative detention of which Carmona III complains, which, again, did not result in his arrest, the stop and detention must only "be supported by a reasonable suspicion of criminal activity" - not by probable cause. *See United States v. Shareef*, 100 F.3d 1491, 1500 (10th Cir. 1996) (internal quotation marks omitted); *and see United States v. Arvizu*, 534 U.S. 266, 274 (2002) (noting that, "[a]lthough an officer's reliance on a mere 'hunch' is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard") (internal quotation marks and citation omitted); *Terry v. Ohio*, 392 U.S. 1, 29-30 (1968) (holding that, "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies

9

himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him"). Thus, even though he has standing to challenge the lawfulness of his detention on the basis of his allegations that the Border Patrol Agents had "no reason" to stop the vehicle, *see* Compl. at 2, ¶ 1, the Court reminds Carmona III that Border-Patrol stops made within fifty miles of the border[5] contribute to establishing reasonable suspicion, *see United States v. Mendez*, 181 Fed. App'x. 754, 757 (10th Cir. 2006) ("Obviously, the closer the stop occurs to the border, the more weight we accord to this factor.. . . A distance of fifty miles or less has routinely been held sufficiently close to the border to contribute to a finding of reasonable suspicion."), and that 8 U.S.C. § 1326 makes it a crime to be present in the United States illegally after having been previously deported. Further, the Tenth Circuit has found

> it instructive, although not dispositive, that federal law permits Border Patrol agents to make warrantless stops within a "reasonable distance" from the border. 8 U.S.C. § 1357(a)(3). "Reasonable distance" is defined by a federal regulation as, inter alia, 100 miles from the border. 8 C.F.R. § 287.1(a)(2).

*United States v. Quintana-Garcia*, 343 F.3d 1266, 1272 n.6 (10th Cir. 2003). Further, the Immigration and Nationality Act allows an immigration agent to question a person, believed to be an alien, about his or her "right to be or to remain in the United States." 8 U.S.C. § 1357(a)(1). It has been conclusively established in this Court that Carmona, Sr. – with whom Carmona, III was riding – was committing federal crimes both by being present in Las Cruces and by using a drivers license and social security number that he fraudulently obtained and presented to the Border Patrol Agents as his own. It is, therefore, extremely unlikely that Carmona III can prevail on his claim of

---

[5] The Court takes judicial notice that Las Cruces is located about 42 miles from the Mexican border.

constitutional violations connected with the detention or the inquiry regarding Carmona III's citizenship.

But even if he could prevail, Carmona III has not alleged any facts to demonstrate an actual injury that could result in compensatory damages. For example, the Court is not aware of any statute or other provision giving Carmona III a "statutory" right either to a college education or to the provision of a ride to get to a college campus. His allegations demonstrate that the reason he could not drive to class himself is because he committed infractions resulting in the suspension of his own driver's license. *See* Compl. at 2, ¶ 2. Carmona III could also get to class by riding a bicycle or taking public transportation. Thus, even if Carmona III could establish that the Border Patrol Agents did not have a reasonable suspicion sufficient to stop the vehicle in which he was riding under the totality of the circumstances, he can not demonstrate a causal link between his brief detention or his father's lawful arrest and any thing other than nominal damages. *See Carey v. Piphus*, 435 U.S. 247, 266 (1978) ("Common-law courts traditionally have vindicated deprivations of certain 'absolute' rights that are not shown to have caused actual injury through the award of a nominal sum of money.").

Because he has failed to establish a right to proceed IFP, and because he has failed to state a cognizable federal claim against Napolitano, the Court must deny permission to proceed IFP and dismiss this Complaint. *See Trujillo*, 465 F.3d at 1217 n.5.

**IT IS ORDERED** that Carmona III's application to proceed IFP [Doc. 2] is DENIED and his Complaint is DISMISSED without prejudice under § 1915(e)(2).

**IT IS FURTHER ORDERED** that the Clerk of the Court shall mail to Carmona III a copy of the long-form application to proceed IFP.

_____
UNITED STATES DISTRICT JUDGE